**E. Jean (Calloway) CARTER, Plaintiff–Appellee,**

v.

**SEDGWICK COUNTY, KANSAS; The Board of County Commissioners of Sedgwick County and Michael R. Brand, Defendants–Appellants,**

**and**

**Jon R. Cameron; Donald E. Gragg; Tom Scott; Bernard Hentzen and Timothy Witsman, Defendants.**

**No. 89–3005.**

United States Court of Appeals, Tenth Circuit.

April 8, 1991.

appeal. Respondent has asserted no facts to raise a question of knowing and voluntary waiv-

er of a direct appeal.

**1502**

Alan L. Rupe, of Kahrs, Nelson, Fanning, Hite & Kellogg (Edward L. Keeley, of Crockett, Keeley & Gilhousen, with him on the briefs), Wichita, Kan., for defendants-appellants.

Beverly Dempsey (J. Greg Kite, with her on the brief), Wichita, Kan., for plaintiff-appellee.

Before ANDERSON and EBEL, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

EBEL, Circuit Judge.

Defendants-appellants appeal from the district court's judgment entered against them for discriminating against plaintiff-appellee E. Jean (Calloway) Carter on the basis of her race, in violation of Title VII and § 1981. In light of the Supreme Court's interpretation of § 1981 in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and our recent holding in *Trujillo v. Grand Junction Regional Center,* 928 F.2d 973 (10th Cir.1991), we reverse the district court's determination of liability under § 1981, and we reverse the award of punitive and consequential damages. We remand for clarification of the district court's ruling on plaintiff's claim of racial discrimination under Title VII. Finally, we affirm the award of attorney's fees in the event that plaintiff is awarded relief under Title VII for racial discrimination.

* The Honorable A. Sherman Christensen, of the United States District Court for the District of Utah, sitting by designation.

*Facts*

Plaintiff E. Jean Carter is a black female. On June 23, 1983, she was hired to work as an office associate for the Sedgwick County Community Corrections Department. Defendant Jon Cameron, the director of the Community Corrections Department, was plaintiff's direct supervisor. Defendant Michael Brand was the assistant director of the Department.

According to plaintiff, Brand frequently directed racial slurs at her, and Cameron sexually harassed her. On February 22, 1985, Cameron left his position as director of the Department, and Brand succeeded him. Although plaintiff had consistently received favorable job evaluations, on Brand's first day as director, he fired plaintiff without any hearing.

Plaintiff then filed this lawsuit. Her complaint alleged race-based discrimination, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983, and gender-based discrimination, in violation of Title VII and 42 U.S.C. § 1983. Plaintiff later raised a procedural due process claim under § 1983, but the district court dismissed that claim prior to trial because it had not been included in either the pleadings or the pretrial order.

Following a bench trial, the district court ruled in favor of plaintiff on her charges of racial discrimination. 705 F.Supp. 1474. The district court in its written order held that "the sole cause of plaintiff's termination was by reason of her race, in violation of 42 U.S.C. § 1981." Dist.Ct.Op. at 1479. Previously, however, in its oral ruling from the bench, the district court expressly premised liability for racial discrimination against defendant Sedgwick County on Title VII. R.Vol. III at 1086–87. The district court specifically stated that its written order "incorporate[d] in full its previous ruling from the bench." Dist.Ct.Op. at 1475.

After finding defendants liable, the district court entered judgment against Brand in his official capacity in the amount of $100,000, along with punitive damages of

$10,000. Dist.Ct.Op. at 1479. The district court also entered judgment against the "Sedgwick County Commission" for lost income in the amount of $10,748.05 and directed the Commission to reinstate plaintiff to her former position, or to a position with a commensurate job rating, within 45 days. Dist.Ct.Op. at 1479. The court further ordered that if the Commission decided not to rehire plaintiff within 45 days, the Commission would have to pay plaintiff her previous salary, including all benefits.

The district court denied relief to plaintiff for her gender-based discrimination claims under Title VII and § 1983. The court dismissed her Title VII gender-based discrimination claim because plaintiff failed to exhaust her administrative remedies. The court denied relief for plaintiff's gender-based discrimination claim under § 1983 (based on the Equal Protection Clause) because plaintiff failed to prove that defendants intended to discriminate against her on the basis of her sex.

*Discussion*

I. *The Applicability of § 1981 to Claims of Race–Based Discharge*

After the district court rendered its decision, the Supreme Court clarified the scope of 42 U.S.C. § 1981 in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).[1] In *Patterson*, the Court was faced with the issue of whether racial harassment occurring in the course of employment was actionable under § 1981. The Court held that harassment occurring after the formation of an employment contract is not actionable, stating that the right "to make ... contracts" under § 1981 "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." *Patterson*, 109 S.Ct. at 2372.

*Patterson* did not settle the issue of whether § 1981 applies to a race-based discharge. Indeed, the Court subsequently

---

1. Section 1981 provides, in relevant part:
   All persons within the jurisdiction of the United States shall have the same right in every

State and Territory to make and enforce contracts ... as is enjoyed by white citizens....
42 U.S.C. § 1981.

has expressly noted that it left that issue open. *See Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 1336 n. 3, 108 L.Ed.2d 504 (1990); *id.,* 110 S.Ct. at 1338–39 (O'Connor, J., concurring). However, the logic of the Court's opinion in *Patterson* indicates that a claim of discriminatory discharge does not implicate the right "to make ... contracts" protected by § 1981 because a discharge occurs after the employment contract has been formed. Thus, in the recent case of *Trujillo v. Grand Junction Regional Center,* 928 F.2d 973 (10th Cir.1991), this court held that § 1981 did not apply to racially discriminatory discharge cases. Many other courts that have addressed this issue agree. *See Williams v. First Union Nat'l Bank,* 920 F.2d 232, 235 (4th Cir.1990); *Prather v. Dayton Power & Light Co.,* 918 F.2d 1255, 1256–58 (6th Cir.1990); *Thompkins v. Dekalb County Hosp. Auth.,* 916 F.2d 600, 601 (11th Cir.1990); *Gonzalez v. Home Ins. Co.,* 909 F.2d 716, 722 (2d Cir.1990); *McKnight v. General Motors Corp.,* 908 F.2d 104, 108–09 (7th Cir.1990); *Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845, 849 (9th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 807–08 (5th Cir.1990). Therefore, we must reverse the district court's determination of liability under § 1981.[2]

Plaintiff argues that her termination did in fact implicate her right to make a contract because she was prevented from entering into a new arrangement to work as an office associate under defendant Michael Brand. However, that argument is inconsistent with the finding of the district court that plaintiff was hired by Sedgwick County, not by Jon Cameron individually. Dist.Ct.Op. at 1475. Thus, although plain-

tiff was denied the opportunity to remain in her present position as an office associate with the Corrections Department, she was not denied any opportunity to enter into a new contract for a new position. As a result, plaintiff was not denied her right "to make ... contracts" under § 1981.

Plaintiff also was not denied her right to "enforce contracts" within the meaning of § 1981. The Supreme Court in *Patterson* held that "[t]he right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Patterson,* 109 S.Ct. at 2373. We note that plaintiff has not alleged that defendants interfered with her legal rights of enforcement of her contract by, for instance, impeding her access to the courts or to nonjudicial methods of dispute resolution.

■ Although plaintiff's claim of discriminatory discharge is not covered by § 1981, it is covered by Title VII. In its written order and judgment, the district court based its ultimate holding exclusively on § 1981. *See* Dist.Ct.Op. at 1479. However, plaintiff alleged that defendants' racial discrimination also violated Title VII, and the court's factual finding of racial discrimination under § 1981 applies fully to plaintiff's discrimination claims under Title VII. *See Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1444 (10th Cir.1988).

Moreover, the district court's written order was expressly intended to "incorporate in full its previous ruling from the bench," Dist.Ct.Op. at 1475. The district court, in its ruling from the bench, premised liability against defendant Sedgwick County on Title VII.[3] R.Vol. III at 1086–87. Thus, the

---

**2.** We apply *Patterson* retroactively to this case. *See Hill v. Goodyear Tire & Rubber, Inc.,* 918 F.2d 877, 880 (10th Cir.1990). We also note that in this instance retroactive application of *Patterson* does not produce inequitable results because nothing suggests that plaintiff would have acted any differently had she known how the Supreme Court would rule in *Patterson* and because Title VII still enables plaintiff to be made whole for her injuries resulting from defendants' discrimination.

**3.** The district court stated in its written Memorandum and Journal Entry of Judgment that "[a]t the close of trial, the court ruled from the bench in favor of plaintiff on her § 1981 claim, and against plaintiff on her Title VII and § 1983 claims." Dist.Ct.Op. at 1475. However, in its oral rulings from the bench the district court stated that "[a]s to the county, through the commissioners, per Title 7, given the findings I have announced, there is no question but what they also stand liable." R.Vol. III at 1086–87. In context it appears that the district court intend-

district court orally found a sufficient basis for liability under Title VII. In light of the fact that the order was issued prior to *Patterson,* plaintiff should not be held accountable for any imprecision in the order. Prior to *Patterson,* plaintiff had little incentive to insist that the district court's written order also base liability on Title VII because § 1981 authorizes a greater range of remedies than Title VII. We therefore remand for the district court to consider whether to amend its written order so as to predicate liability of the county under Title VII as was the case in its oral rulings from the bench.

Title VII claims are considered equitable actions, for which legal remedies are unavailable. In contrast, § 1981 claims are actions at law, and parties prevailing on § 1981 claims are entitled to the full panoply of legal remedies, which are broader than the remedies under Title VII. *See* M. Player, *Employment Discrimination Law* § 5.67, at 445 n. 42 (1988). *See also Patterson,* 109 S.Ct. at 2375 n. 4. In light of our conclusion that § 1981 does not apply to race-based terminations, the district court's award of $100,000 against Michael Brand, and the award of $10,000 in punitive damages, are without statutory authority and should be vacated. However, the district court's award of $10,748.05 in lost income would be authorized under Title VII as back pay if the district court predicates liability of the county under Title VII.

Defendants also challenge the district court's award of front pay and attorney's fees. In order to provide guidance to the district court upon remand, those arguments are considered below.

## II. *Front Pay*

In its written order, the district court directed defendant "Sedgwick County Commission" to reinstate plaintiff to her former job or to a position with a commensurate rating within 45 days. Dist.Ct.Op. at 1479. The district court further ordered that "[i]f, for whatever reason, the commission elects

not to accept the plaintiff for employment, then on the 45th day [after the date of the district court's order] the plaintiff's salary in the amount of $19,245.00 per annum, together with full benefits, shall commence and be payable to her on a monthly basis." *Id.*

Decisions concerning front pay under Title VII fall within the trial court's discretion. *See Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957 (10th Cir.1980). Title VII is an equitable statute designed only to make victims of discrimination whole. In light of the remedial purpose of Title VII, an award of front pay should be limited to the amount required to compensate a victim for the continuing future effects of discrimination until the victim can be made whole. *See Pitre v. Western Electric Co.,* 843 F.2d 1262, 1278 (10th Cir.1988). Therefore, a front pay award must specify an ending date and must take into account any amount that the plaintiff could earn using reasonable efforts. *See Edwards v. Occidental Chemical Corp.,* 892 F.2d 1442, 1449 (9th Cir.1990).

The district court's failure to specify an ending date and to take into account plaintiff's earning capacity amounts to a clear abuse of discretion. Therefore, we vacate the award of front pay. Upon remand, if the district court predicates county liability on Title VII, it should recalculate the award to reflect plaintiff's earning capacity and to determine the time period required in order to make plaintiff whole. We note that the determination of the appropriate cut-off date for a front pay award is within the district court's discretion, but that the determination must be based on "more than mere guesswork." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985).

## III. *Attorney's Fees*

Following trial, plaintiff's attorneys filed an application for attorney's fees and expenses. In support of their application, the attorneys submitted reconstructed (as op-

---

ed to rule against plaintiff on her Title VII claim for sexual discrimination but to rule in her favor and against the county on her Title VII

claim for racial discrimination. However, we remand for the district court to clarify this matter.

posed to contemporaneous) time records. The district court granted the application and found that all of the hours spent by the attorneys were reasonable. However, the court made a 40 percent reduction for the time spent in preparing plaintiff's unsuccessful sexual harassment and due process claims, which were unrelated to the claim of racial discrimination on which she had prevailed.

██ The district court made its award of attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988 does not authorize attorney's fees for parties prevailing on Title VII claims. However, § 706(k) of Title VII provides specific authority for prevailing parties to recover attorney's fees.[4] Section 706(k) and § 1988 "are so similar in language and purpose that in most cases they are given similar judicial interpretations." M. Player, *Employment Discrimination Law* § 5.69, at 450 (1988); *see also Cooper v. Singer,* 719 F.2d 1496, 1499 n. 5 (10th Cir.1983) (en banc) (noting that "Congress intended that 'the standards for awarding attorney's fees [under § 1988] be generally the same as under the fee provisions of the 1964 Civil Rights Act.'" (*quoting* S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912)).

██ Defendants argue that the district court abused its discretion in permitting plaintiff's attorneys to rely upon reconstructed time records and in holding that all of the hours spent by the attorneys were reasonable. In *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983), we indicated that a party claiming attorney's fees must be prepared to establish the hours expended by the attorneys by means of contemporaneous time records if requested by the trial court. Pursuant to *Ramos,* it would not be an abuse of discretion for a district court to require contemporaneous time records, and often contemporaneous time records will be necessary in order for "the

fee applicant [to carry] ... the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). We did not intend to require contemporaneous records, however, as a per se absolute requirement. *See, e.g., MacDissi v. Valmount Industries,* 856 F.2d 1054, 1061 (8th Cir.1988); *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 974 (4th Cir.1987); *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

In this case, the district court determined the number of expended attorney's hours by referring to the evidence submitted by the plaintiff's attorneys. This evidence consisted of extremely detailed itemization of time spent on specific aspects of the plaintiff's case. Each attorney supported by affidavit that the itemizations were accurate and reasonable representations of the work done on behalf of the plaintiff. The individual time expanded was itemized in quarter-hour increments and each entry contained a detailed description of what was done at that time. In addition, as to the reasonableness of the itemizations, the court consulted the affidavit of Jim Lawing, a litigator who the court viewed "as an expert in similar cases." R.Vol. IV at 10. Finally, the district court judge found "that drawing from 28 years of law practice ... the hours expended ... [seemed] reasonably incurred...." *Id.*

██ We review the district court's award of attorney's fees under an abuse of discretion standard. *See V–1 Oil Co. v. State of Wyoming, Dept. of Environmental Quality,* 902 F.2d 1482, 1489 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). *See also Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 ("[D]is-

---

**4.** Section 706(k) provides, in relevant part:
  In any action or proceeding under this title the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....

Civil Rights Act of 1964, tit. VII, § 706(k), 78 stat. 241, 261 (1964) (codified at 42 U.S.C. § 2000e–5(k)).

trict court to determine what fee is 'reasonable.' ") Given the copious and detailed evidence offered in this case, "[t]he district court's finding ... [of the] hours ... spent on the issues for which fees were awarded is not clearly erroneous," *V–1 Oil*, 902 F.2d at 1489, and comports with the assumption that the "court saw the attorney's work first hand," *Poolaw v. City of Anadarko, Oklahoma*, 738 F.2d 364, 368 (10th Cir. 1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), and has a "superior understanding of the litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Therefore, provided that the district court upon remand predicates liability upon Title VII, we affirm the fee award as not an abuse of the district court's discretion.

### Conclusion

In light of the Supreme Court's decision in *Patterson* and our holding in *Trujillo*, we REVERSE the district court's determination of liability under § 1981. We REMAND for clarification by the district court whether liability against any appellant-defendants should be premised upon Title VII. We VACATE the district court's award of $100,000 against Michael Brand and the $10,000 in punitive damages because those awards are not authorized by Title VII. We also VACATE the award of front pay, and we REMAND for further proceedings pertaining to an award for front pay consistent with this opinion. In the event that the district court predicates liability upon the county on Title VII, we AFFIRM the award for back pay and the award of attorney's fees as within the discretion of the district court.